UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

CRIMINAL NO. 16-20755

v.

HON. JUDITH E. LEVY

D-1 ASHANTI WALTON,

Defendant.

____________________________________/

**Government's Sentencing Memorandum**

Defendant Ashanti Walton stands convicted of possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Despite being a felon and on probation, Walton amassed a small arsenal of weapons to support his drug trafficking activities. For the reasons stated in this memorandum, a sentence of **60 months'** imprisonment—the minimum required by statute—is appropriate in this case.

## I. Facts and Procedural History

On October 17, 2016, officers of the Michigan State Police and the Western Wayne Criminal Investigations unit executed a state search warrant for evidence of drug trafficking at a residence in Inkster, MI. (PSR ¶ 12.) As officers were approaching the residence, a vehicle pulled into the driveway. (*Id.*) Walton was the

driver and lone occupant. (*Id.*) He was taken into custody, and a baggie of crack cocaine was found on the ground near where he had existed the vehicle. (*Id.*; Gov. Resp. to Mot. for Revocation of Detention Order, Dkt. 27 at PageID 510.)



The officers then proceeded towards the residence. (PSR ¶ 12.) After encountering Walton's significant other and four children (then aged 2–16), they cleared the residence and proceeded with the search. (*Id.* ¶¶ 12–13, 38.) The search turned up many items relating to drug trafficking, including 23 grams of crack cocaine, 118 Xanax pills, 116 grams of marijuana, $3,457 cash, and seven firearms. (*Id.* ¶ 16.)

<u>Kitchen</u>:

A firearm and Taser on top of the refrigerator—

- Taurus model PT738, semi-automatic pistol, .380 caliber, loaded with six rounds;




- Taser;




Drugs, drug trafficking materials, and cash on the counter—

- Approximately 20 gms. of crack cocaine;
- Marijuana;
- Nine Alprazolam pills;
- Shoebox containing marijuana;
- Digital scale, narcotic packaging material, glass cutting board;
- $1000 US currency.




(PSR ¶ 13; Dkt. 27 at PageID 511–512.)

Walton's Bedroom:

- Taurus model M669, six-shot revolver, .357 caliber, loaded with six rounds;



- Safe containing $2000 US currency;

- Nineteen (19) Xanax pills in a dresser.

(PSR ¶ 14; Dkt. 27 at PageID 512.)

Basement:

Two firearms behind a couch—

- Mossberg model 500, pump-action shotgun with pistol grip, 12 gauge, loaded with five rounds;



- Ruger model 10/22, semi-automatic rifle with folding stock, .22 caliber;



Three firearms, body armor, ammunition, drugs, and drug trafficking materials in a closet—

- Hi-Point model CF380, semi-automatic pistol, .380 caliber, loaded with seven rounds;



- Spanish “Ruby” model, semi-automatic pistol, .32 caliber;
- Smith & Wesson Hand Ejector, six-shot revolver, .32 Long caliber;



- Ballistic body armor vest;



- Various rounds of ammunition;
- Approximately 80 grams of marijuana;




- 89 Hydrocodone pills;
- One gram of crack cocaine;
- Digital scale and cutting mirror.

Ammunition, marijuana, a digital scale, and a small amount of crack cocaine on the bar.

(PSR ¶¶ 15–16; Dkt. 27 at PageID 513–15.)

After being advised of and waiving his rights, Walton admitted to selling drugs and that all of the firearms located in the house belonged to him. (PSR ¶ 17.) A criminal records search revealed that Walton was a convicted felon and was on a diversion probation for a felony offense at the time of his arrest. (*Id.* ¶ 18.)

In the PSR, the probation department calculated Walton's guideline range to be 60 months, based on the minimum term of imprisonment required by statute. (*Id.* ¶¶ 23, 58–59.) The probation department calculated Walton's criminal history to be category III. (*Id.* ¶ 32.) The Government has no outstanding objections to the PSR. This Court has set sentencing for April 2, 2019.

## II. Discussion: Section 3553(a) Factors

The Supreme Court has noted that, in formulating the Sentencing Guidelines, the U.S. Sentencing Commission's goal is to carry out the objectives of 18 U.S.C. § 3553(a). *United States v. Rita*, 551 U.S. 338, 347 (2007). The Guidelines are meant to "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Id.* at 350. The Guidelines serve as the "starting point" for choosing a sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). The factors to be considered from that starting point are: (a) the nature and circumstances of the

offense; (b) the history and characteristics of the defendant; (c) the seriousness of the offense, promotion of respect for the law, and just punishment for the offense; (d) adequate deterrence and protection of the public; and (e) the defendant's needed educational or vocational training, medical care, or other correctional treatment; the kinds of sentences available; and the need to avoid unwarranted sentencing disparities between defendants who are guilty of similar conduct. 18 U.S.C. § 3553(a). The government recommends a sentence of sixty months' imprisonment, the minimum term of imprisonment required by statute.

**A. The nature and circumstances of Walton's offense**

Among the factors to be considered in sentencing are the nature and circumstances of the offense. 18 U.S.C. § 3553(a)(1). Despite already being a felon and being on probation, Walton chose not only to deal drugs—including crack cocaine, Xanax, and marijuana—but also to have on hand seven firearms in furtherance of his drug trafficking. The firearms included three semi-automatic pistols, two revolvers, a pump-action shotgun, and a semi-automatic rifle with folding stock—two of the semi-automatic pistols, one of the revolvers, and the pump-action shotgun were loaded. He also had body armor, extra ammunition, and a Taser rounding out his arsenal. These drugs and weapons, many of which were loaded, were scattered throughout the home and accessible to the four children living there. One of the loaded semi-automatic pistols was stored right behind a monopoly

game. Notably, although a safe was found in the home, none of those seven weapons was found locked away in a safe.

**B. Walton's criminal history and characteristics**

Additional factors to be considered in sentencing are the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). Walton is nearly 40 years old. He reports having had a good youth, with parents who provided for all his needs and with whom he had a good relationship. (PSR ¶ 36.) Even so, he spent much of his life from the age of 18 until now either committing crimes or serving time for his criminal offenses. (*Id*. ¶¶ 24–29.)

In 1998, Walton was convicted of carrying a concealed weapon. (*Id*. ¶ 24.) He was given probation under the Holmes Youthful Trainee Act, but rejected the opportunity the 3rd Circuit Court gave him. (*Id*.) While on probation in 2000, Walton committed retail fraud and assault with intent to rob while armed. (*Id*. ¶¶ 25–26.) Two motions to show cause were filed against Walton for absconding from probation, and his HYTA status was revoked. (*Id*. ¶ 24.) For his conviction for assault with intent to rob while armed, Walton was sentenced to 3–15 years in custody. (*Id*. ¶ 26.) He was released on parole in October 2009. (*Id*.)

In 2016, he was convicted of possession of cocaine less than 25 grams. (*Id*. ¶ 29.) The 3rd Circuit Court gave him yet another chance, sentencing him to probation under Public Act 7411. (*Id*.) And again, he spurned the opportunity given

to him. Walton, already a felon, chose again to engage in criminal activity while on probation—this time, trafficking drugs and amassing an array of weapons to support his drug trafficking activities. (*Id.*)

**C. The seriousness of Walton's offense and the objectives of promoting respect for the law and providing just punishment for Walton's offense**

Other factors to be considered in sentencing are the seriousness of the offense and the objectives of promoting respect for the law and providing just punishment. 18 U.S.C. § 3553(a)(2)(A). Possessing a firearm as a felon is already a serious offense, especially for a felon like Walton, who has a history of violence. (*Id.* ¶ 26.) It is even more serious to possess a semi-automatic firearm. It is also a serious offense to possess a firearm in furtherance of drug trafficking—a seriousness recognized by Congress in legislating a mandatory minimum sentence for the crime. But Walton took it much further. Despite being a felon, he amassed not one, but seven firearms (four of them semi-automatic)—along with body armor and a taser—in furtherance of trafficking an assortment of drugs. (*Id.* ¶ 16.) Moreover, Walton chose to traffic drugs and amass his arsenal while on probation for a drug charge. (*Id.* ¶ 29.)

As a result of his plea agreement, Walton stands convicted of only one count of a nine count superseding indictment—the agreement takes into account dismissal of charges for maintaining a drug-involved premises, possession with intent to

distribute controlled substances, being a felon in possession of a firearm, being a violent felon in possession of body armor, and being a felon in possession of ammunition. (*Id.* ¶¶ 6, 9.) A guideline sentence of the minimum required by statute would provide just punishment for the instant offense while promoting respect for the law once Walton is released.

### D. The objectives of providing adequate deterrence and protecting the public

Courts must also consider how a sentence will provide adequate deterrence and protection of the public. 18 U.S.C. § 3553(a)(2)(B)–(C). Despite having been convicted of multiple crimes over the past three decades, Walton has remained undeterred from committing further crimes and unappreciative of the chances he has been given to avoid serving time. For his first offense at the age of 18, he was given a chance—sentenced only to probation. (*Id.* ¶ 24.) He responded by choosing to commit new crimes. (*Id.* ¶¶ 24–26.) One of those was assault with intent to rob while armed. (*Id.* ¶ 26.) After serving time on that, he still did not reform, continuing to commit more crimes. (*Id.* ¶¶ 26–29.) Nor did he reform after being given yet another chance in 2016, being sentenced again to only probation for a drug offense. (*Id.* ¶ 29.) Again, he chose to engage in new criminal activity—trafficking drugs and amassing a small arsenal in support of his trafficking. (*Id.* ¶¶ 16, 29.)

Walton has no respect for the law, nor respect for the courts that have given him opportunities to reform. He must learn that repeatedly violating the law, and

doing so while on probation, has consequences. Furthermore, a guidelines sentence is appropriate to protect the public from a person who, already a felon and on probation, chooses to assemble an arsenal of weapons to support drug trafficking activities and to leave both drugs and weapons accessible to children.

### E. The need to provide educational or vocational training, medical care, or other correctional treatment; the kinds of sentences available; and the need to avoid unwarranted sentencing disparities among defendants

The Government supports any educational or vocational programs available to Walton while in custody. A guideline sentence in this case would be consistent with other sentences imposed for similar crimes.

## III. Conclusion

The government recommends a sentence of **sixty months'** imprisonment.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

*s/ Alyse Wu*
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9589
E-Mail: alyse.wu@usdoj.gov

Dated: March 26, 2019

## Certificate of Service

I certify that on March 26, 2019, I electronically filed the Government's Sentencing Memorandum with the Clerk of the Court of the Eastern District of Michigan using the ECF system which will send notification of such filing to all counsel of record.

*s/ Alyse Wu*
Assistant U.S. Attorney
United States Attorney's Office